# In the United States Court of Federal Claims

No. 08-757C
Filed March 27, 2009
NOT FOR PUBLICATION

|                                              |   |
|----------------------------------------------|---|
| UNITED CONSTRUCTORS, LLC,                    | ) |
|                                              | ) |
| Plaintiff,                                   | ) |
|                                              | ) |
| v.                                           | ) |
|                                              | ) |
| THE UNITED STATES,[1]                        | ) |
|                                              | ) |
| Defendant.                                   | ) |

Justin D. Heideman, Ascione, Heideman & McKay, L.L.C., Provo, Utah, for plaintiff.

Jeffrey A. Regner, Trial Attorney, Martin Hockey, Assistant Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge.

Plaintiff United Constructors filed this action pursuant to the Contract Disputes Act ("CDA") seeking compensation for several claims arising out of the construction of a water system improvement project at Lake Tahoe, California. The Government filed a partial motion to dismiss, asserting that the United States Court of Federal Claims does not have jurisdiction over claims denominated in plaintiff's complaint as "reservations three, four and five," because no proper CDA claims related to those allegations were submitted to the contracting officer. For the reasons set forth below, the Court grants the Government's partial motion to dismiss.

---

[1] Although plaintiff's complaint names the "U.S. Forest Service" as defendant, the United States is the only proper defendant in this court. See Rule of the Court of Federal Claims 10(a).

**I.      Background**

On September 28, 2005, plaintiff United Constructors was awarded a contract numbered AG-9A63-C-05-0044 for the construction of the Fallen Leaf Water System Improvement Project located on the Lake Tahoe Basin Management Unit, South Lake Tahoe, California.  Complaint ¶ 1.  The original bid accepted by the Forest Service was for $843,884.00, but through a series of seven amendments the contract price was eventually raised to $1,124,233.00.  *Id.* ¶¶ 2-12.

On August 10, 2007, United Constructors ("United") executed a Contract Release which acknowledged receipt of a final payment of $17,123.00 and released the Forest Service from its obligations under the contract with the exception of five reservations, as follows:

> Reservation No. 1.  All added costs sustained for "Rock Refill" as it pertains to all boulders and rocks ½ cubic yards in volumn [sic] and smaller.
>
> Reservation No. 2.  All added costs sustained which resulted from a three-month government-caused delay when it took the government that long to approve the needed engineering and cost negotiations for the cathodic protection and needed circulation systems for the 480,000 gallon water storage tank that had been overlooked in the design stages for this project, and which caused both the tank crews and our crews to share the work site at the tank for a mojor [sic] period of time.
>
> Reservation No. 3.  All added costs sustained by us that were not included in Modification Number 7 [to the Contract] for having to remobilize this spring to complete work around the tank that could have been completed last fall had the government not opted to have the tank coated instead even though the coating contractor had advised that their coatings could have easily waited until the spring of 2007.
>
> Reservation No. 4.  Other miscellaneous added costs that we have sustained in having to retain an attorney, and added costs we had to pay to hire an engineering firm to measure all boulders when the government would not accept our measurements.
>
> Reservation No. 5.  All justifiable time extensions.

Complaint ¶ 13.  The underpinnings for these reservations are further explained in the complaint, as set forth below.  The facts described are those set forth in the plaintiff's complaint and documents plaintiff attaches to its opposition to the partial motion to dismiss.  For the purposes of this partial motion to dismiss, all facts are construed favorably to the plaintiff.

   *A.*     The Reservations

      1.     <u>Reservation One</u>

As part of its performance of the contract, United excavated 1,723 lineal feet of trenches for the installation of water mains and electrical power ducts. Complaint ¶ 26. The contract provided that the backfill United used to refill the trenches should not include rocks or boulders greater than three inches in diameter. *Id.* ¶ 23.

The solicitation estimated that there would be 25 cubic yards of boulders ½ cubic yard in volume or greater, but United removed 384 cubic yards of such boulders. *Id.* ¶¶ 24, 27. United's bid reflected a charge of $225 per cubic yard to remove boulders ½ cubic yard in volume or greater, and United was paid in full at the contract rate for the 384 cubic yards. *Id.* ¶¶ 25, 28.

United also removed 883 cubic yards of rocks or boulders larger than three inches in diameter (and thus unsuitable for use in the backfill), but smaller than ½ cubic yard in diameter. *Id.* ¶ 29. The contract neglected to establish what compensation United would be entitled to for the removal of these smaller boulders. *Id.* ¶ 32. The Forest Service requested that many of these boulders be moved to a Forest Service campground near the site of the project, and United complied at no additional cost to the Forest Service. *Id.* ¶ 30. United's actual cost for removal of these smaller boulders was slightly more than $225 per cubic yard because they needed to be sieved to recover soil for backfill, then hauled to the campsite, backfilled, and compacted. *Id.* ¶ 33.

On January 7, 2007, United advised the Forest Service that it had disposed of 883.41 cubic yards of boulders larger than four inches in diameter and smaller than ½ cubic yard, with a report to that effect from Turner & Associates Land Surveying, and demanded payment at $225 per yard, for a total of $198,767.55. *Id.* ¶¶ 15-17.

      2.     <u>Reservation Two</u>

As part of its performance of the contract, United subcontracted the construction of a 480,000-gallon water tank to Paso Robles Tank, Inc. Complaint ¶ 37. The work progress schedule called for the tank to be completed by June 23, 2006, but just before work was to begin, the Forest Service requested a change in the design to include freeze protection (also referred to as a water re-circulating system) and cathodic (*i.e.*, corrosion) protection for the tank. *Id.* ¶¶ 39-40. This delayed commencement of work on the tank by approximately 95 days. *Id.* ¶ 42. The late completion also necessitated de-humidifying equipment, which the Government agreed to and paid for. *Id.* ¶¶ 45-46.

Because United authorized Paso Robles to negotiate the changes directly with the Government, *id.* ¶ 41, it did not know when the final tank designs would be approved. *Id.* ¶ 47. Although United had planned to have full access to the road in July of 2006 (after the original

tank completion date), it delayed work on the utilities to be installed under the access road to the tank. *Id.* ¶¶ 48-49. United had committed to doing pipe bores under Highway 89 during May and June 2006, before the summer heavy traffic began, but Paso Robles needed the road to be intact and graded so its heavy equipment could reach the tank. *Id.* ¶¶ 50, 52. The delay in the schedule resulted in both United and Paso Robles needing access to the tank road in August, September and October. Letter from "Bud" Barnes to Dave Brady, Forest Service, Sept. 28, 2006, Ex. A to Opp. to Mot. to Dismiss (docket entry 9-2, March 3, 2009) ("Sept. 28 Letter"). In order to attempt to complete the project before winter, Paso Robles worked ten hours per day Monday through Thursday. Complaint ¶ 54. Each Friday morning, United would commence excavations where they had previously left off, and each Sunday, United would fill and compact all of the excavations and regrade the road to allow Paso Robles to work on the tank the next day. *Id.* ¶¶ 55-56.

United was forced to spend significant time each week restarting and undoing the excavations, rebuilding the road, and leasing expensive equipment seven days a week that it could only use three days. *Id.* ¶¶ 57-58. On December 6, 2006, United sent the Forest Service an Estimate for Change Order notifying the agency of an increase of $118,865.88 in costs due to Government delay. *Id.* ¶ 14.

### 3. Reservation Three

Paso Robles completed the construction of the tank in the fall of 2006, and only two major tasks remained: (1) United had approximately two weeks' worth of excavation work to do to complete the project; and (2) a painting sub-contractor needed to paint (or coat) the tank. Complaint ¶ 63. To accommodate the completion of the project, the Tahoe Regional Planning Agency ("TRPA"), extended the fall deadline for all excavations at the site by two weeks. *Id.* ¶ 64. The remaining excavations were at the tank site and could not be done at the same time as the tank painting. *Id.* ¶ 66.

United and the painting subcontractor agreed that it was not critical to have the tank painted prior to winter, because it would need to be sandblasted prior to painting either that fall or the following spring. *Id.* ¶ 67. The painting subcontractor assured the Forest Service there would be no additional costs if it returned in the spring of 2007 to paint the tank. *Id.* ¶ 68. Therefore, both the painting subcontractor and United recommended that the two-week extension be used to complete the excavations around the tank, with the subcontractor to return and paint the tank in the spring of 2007 at no additional cost. *Id.* ¶¶ 69-70. United explained to the Forest Service that once the excavations were complete, it would be able to demobilize all the rented heavy equipment. *Id.* ¶ 71.

The Forest Service nonetheless insisted that the tank be painted in the fall of 2006, preventing the excavations from being completed that fall. *Id.* ¶ 72. United was forced to re-mobilize heavy equipment in the spring of 2007 at a cost of $38,001.12, only $11,422 of which the Government paid. *Id.* ¶¶ 74-75. United's complaint seeks to recover the remaining

$26,579.12, along with a contractual profit margin of 10% on that amount, for a total of $29,237.03, for the spring 2007 remobilization. *Id.* ¶¶ 26-27.

    4.  <u>Reservation Four</u>

With respect to the removal of large and small boulders from the backfill, United reported those volumes according to its own measurements. Complaint ¶ 79. The Forest Service would not accept United's measurements and instead required it to hire a surveying firm to document the total cubic yardage of boulders removed. *Id.* ¶¶ 80-81. Moreover, United had to retain legal counsel as the result of the Forest Service's refusal to respond to its claims. *Id.* ¶ 82. United therefore seeks compensation for the professional expenses it has incurred as the result of the Forest Service's actions. *Id.* ¶ 83.

    5.  <u>Reservation Five</u>

As a result of the delays caused by the Forest Service, United incurred significant expenses, including additional workers' compensation costs, liability insurance costs, and additional housing, travel, fuel and labor expenses. Complaint ¶ 85. United asserts that it is entitled to compensation for these additional expenses. *Id.* ¶ 86.

  B. *Assertion of Claims*

On March 3, 2007, United wrote to Contracting Officer Denise Storms, requesting compensation for "three unresolved major issues." Letter from Bud Barnes to Denise Storms, Ex. C to Pl.'s Opp. to Mot. to Dismiss (docket entry 9-4, March 3, 2009) ("March 3 Letter"). The first was the issue of costs for boulder disposal; Mr. Barnes sought $166,329 already expended and another $32,439 in expected costs for the work when resumed in the spring. The second issue was the delay caused by adding cathodic protection and circulating systems to the tank engineering. Mr. Barnes requested $103,721 for costs associated with this delay. *Id.* Finally, Mr. Barnes discussed "[t]he third item of added costs we have yet to consider" which was "the need to re-mob[ilize] all of the heavy equipment this spring, when we return to finalize the project." *Id.* No specific amount attributable to this third item appears in the letter. Mr. Barnes concludes that "We can document all related costs, which will show that we have not only used our anticipated $100,000 in profits to pay for these added costs, but I have provided more than $220,000 of my personal funds to also pay for these added costs to us. It becomes obvious that these needed additional funds equate to more than $300,000, as do our claims. This is not coincidental. One supports the other." *Id.*

By letter of March 7, Contracting Officer Denise Storms "again state[d]" the Government's position on United's requests. Letter from Ms. Storms to Mr. Barnes dated March 7, 2007, Ex. D to Pl.'s Opp. to Mot. to Dismiss (docket entry 9-5, March 3, 2009) ("March 7 Letter"). Acknowledging a "larger than expected amount of boulders and very large rock," she agreed to raise the compensable quantity of large boulders, but refused compensation for the

smaller boulders based upon contract terms. *Id.* She denied the claim for compensation based upon the delay in tank engineering because, among other things, "you had from the middle of May through the first week of August to install waterline on the tank access road." *Id.* She concluded by "denying your request for additional money over what has already been agreed to and you have been compensated for. The project delays were not due to actions of the Forest Service and you have been compensated for extra costs associated with all of the changes on this project." *Id.*

On March 22, 2007, Mr. Barnes submitted certified claims for the items contained in reservations one and two. Complaint ¶ 20; Letter from Mr. Barnes, dated March 22, 2007 (docket entry 9-6, March 3, 2009) ("March 22 Letter"). The complaint asserts that the certified claims were for $198,767 for reservation one (large and small boulder disposal) and $118,865.88 for reservation two (tank engineering delay). Complaint ¶ 20. The March 22 Letter itself, however, requests only $103,721 in added costs for the change in tank engineering. (It does seek $198,767 for boulder disposal.) After Mr. Barnes's signature, a postscript reads: "It should be noted that the Contractor has at least one more claim to submit that must wait for documented added costs to re-mobilize our crews and heavy equipment this coming May, in order to finalize the work at the tank site, which became necessary solely because the government opted to have the water storage tank coated last fall instead of allowing us to complete the site work at the tank at that time and have the tank coated this coming spring, as scheduled." March 22 Letter at 1-2.

After submission of the March 22 Letter containing the certified claims, more than 60 days elapsed without a decision, resulting in a deemed denial.[2] Complaint ¶ 21. Plaintiff filed a complaint in this Court on October 23, 2008 (docket entry 1).

On December 19, 2008 defendant filed a Motion for Partial Dismissal pursuant to Rule 12(b)(1) (docket entry 5). After two extensions of time, plaintiff filed its response to the motion to dismiss on March 3, 2009 (docket entry 9), and the defendant filed a reply on March 13, 2009 (docket entry 10). Defendant alleges that United did not properly submit reservations three, four, and five as CDA claims to the Contracting Officer, and that the court therefore lacks subject matter jurisdiction over those claims.

## II.   Standard of Review

In ruling on a motion to dismiss for lack of jurisdiction pursuant to Rule of the Court of

---

[2] The contracting officer is required to issue a final decision on a submitted claim of $100,000 or less within sixty days of receipt. *See* 41 U.S.C. § 605(c)(1). For a certified claim of over $100,000, the contracting officer may inform the contractor when a final decision will be made, so long as it is within a reasonable time period. *Id.* §§ 605(c)(2), (3). If the contracting officer does not make a decision within sixty days or does not inform the contractor when a decision will be rendered, the claim may be "deemed denied" and the contractor is authorized to file an appeal. *Id.* § 605(c)(5).

Federal Claims ("RCFC") 12(b)(1), the court assumes that the allegations in the complaint are true and construes those allegations in plaintiff's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). However, plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to invoke the court's jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). The court may look to evidence outside of the pleadings to determine the existence of subject matter jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 & n.4 (1947). Plaintiff has attached materials to its opposition to the partial motion to dismiss, and the Court refers to these materials "to the extent that they allow the court to determine whether it has jurisdiction over this case." *Lechliter v. United States*, 70 Fed. Cl. 536, 543 (2006). If the court concludes that it lacks subject matter jurisdiction over a claim, RCFC 12(h)(3) requires the court to dismiss that claim.

**III.   Analysis**

   *A.   A CDA Claim For Payment of Money Requires a "Sum Certain"*

This Court possesses jurisdiction over "any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978 . . . on which a decision of the contracting officer has been issued under [41 U.S.C. § 605]." 28 U.S.C. § 1491(a)(2).[3] The CDA requires all claims to "be in writing" and to "be submitted to the contracting officer for a decision;" those claims in excess of $100,000 must also be certified as accurate by an authorized representative of the contractor. 41 U.S.C. § 605. A final decision by the contracting officer on a claim by the contractor is a jurisdictional prerequisite to a suit in this court. *James M. Ellett Constr. Co. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996).

The CDA does not define what constitutes a "claim," and the court therefore looks to the Federal Acquisition Regulation ("FAR") for guidance. *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995). The FAR defines a "claim" as:

> a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money *in a sum certain*, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. However, a written demand or written assertion by the contractor

---

   [3] Section 10(a)(1) of the CDA is codified at 41 U.S.C. § 609(a)(1) and permits contractors to choose whether to appeal the decisions of government contracting officers to agency boards of contract appeals or to this court. A contracting officer's decision is "final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal or suit is timely commenced as authorized [under the CDA]." *Id.* at § 605(b). The contractor has six years after accrual of the claim to submit it to the contracting officer for a decision. *Id.* § 605(a); *see also Sharman Co., Inc. v. United States*, 24 Cl. Ct. 763, 769 (1991). A contractor may bring an action in the United States Court of Federal Claims within twelve months after the contracting officer's final decision. *Id.* at §§ 609(a)(1), (3).

>  seeking the payment of money exceeding $100,000 is not a claim under the
>  Contract Disputes Act of 1978 until certified as required by the Act.

FAR § 2.101 (emphasis added). There are no "magic words" required for a claim, but to recover money damages, a claim seeking a non-routine payment must be "(1) a written demand or assertion, (2) seeking as a matter of right, (3) the payment of money in a sum certain." *Ellett*, 93 F.3d at 1542. A contractor may satisfy the "sum certain" requirement if the amount sought "can be easily determined by a simple mathematical calculation or from the contractor's submission to the contracting officer." *Metric Constr. Co. v. United States*, 14 Cl. Ct. 177, 179 (1988). Several documents taken together can constitute a proper claim. *Contract Cleaning Maint. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987); *Kirkham Constructors, Inc. v. United States*, 30 Fed. Cl. 90, 93-94 (1993).

General statements reserving the right to file a claim in the future fail to satisfy the "sum certain" requirement. *CPS Mech. Contractors v. United States*, 59 Fed. Cl. 760, 765 (2004) (finding no CDA claim when contractor "failed to provide the CO with any dollar figure or documentation that could be used to compute a dollar figure"); *Mingus Constr., Inc. v. United States*, 812 F.2d 1387, 1394 (Fed. Cir. 1987). The claim must be sufficiently specific to "meet the twin purposes of the CDA's administrative exhaustion requirement—to screen out unwarranted or inflated claims and to facilitate resolution of contract disputes by negotiation, at the agency level, rather than by litigation." *North Star Alaska Housing Corp. v. United States*, 76 Fed. Cl. 158, 184 (2007) ("If no sum certain is specified, the contracting officer cannot settle the claim by awarding a specific amount of money because such a settlement would not preclude the contractor from filing suit seeking the difference between the amount awarded and some larger amount never specifically articulated to the contracting officer.") (internal citations and quotations omitted).

Plaintiff maintains that a CDA claim can be either for "a sum certain or other relief arising from or relating to the contract." Pl.'s Mem. in Opp. to Mot. for Partial Dismissal (Pl.'s Opp.") at 9 (docket entry 9, March 3, 2009). That is undoubtedly true. But plaintiff posits these in the alternative: where it has failed to seek a sum certain, it can request the payment of money in a previously undisclosed amount as "other relief." But the payment of money is not "other relief" within the meaning of the FAR; the "other relief" provision is directed to non-monetary remedies, *e.g.*, a declaration of rights or injunctive relief. *See, e.g.*, *Todd Constr. L.P. v. United States*, 85 Fed. Cl. 34 (2008). Plaintiff's complaint does not seek such "other relief," requesting only the payment of money. Complaint, Prayer for Relief. Because United Constructors attempts to recover the "payment of money," a CDA claim must contain a request for that money in a "sum certain." *Appeal of KM Records, Inc.*, 94-2 BCA ¶ 26,749 (March 18, 1994).

Plaintiff relies heavily upon *Transamerica Insurance Corp. v. United States*, 973 F.2d 1572 (Fed. Cir. 1992), *overruled in part by Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed. Cir. 1995), for the proposition that a claim requires only that "a contractor's submissions show an expression of interest in a final decision by the CO" and that the court should use a "common

sense analysis" in determining whether that single requirement is met. Pl.'s Opp. at 8, 10. This misconstrues the applicable analysis. The issue presented in *Transamerica* was whether the contractor's submission had sufficiently requested a final decision of the contracting officer—the requirement that a CDA claim request a "sum certain" was not at issue. 973 F.2d at 1574 (letter to contracting officer sought equitable adjustment of $241,919). *Transamerica* does not alter the Court's analysis regarding the necessity for a "sum certain" to be included in a CDA claim for payment of money.

      B.      *No Proper CDA Claims Were Presented to the Contracting Officer for Reservations Three, Four and Five*

United Constructors contends, with respect to reservations three, four, and five, that "United's letters to the CO are *assertions* of right – to receive compensation for the professional expenses it incurred in measuring the boulders, the $29,237.03 for its Spring 2007 remobilization at the direction of the Forest Service, the costs of suit if the matter had to be litigated, and the workers compensation, additional liability insurance costs, housing costs and overrun costs." Pl.'s Opp. at 9. The letters United submits with its opposition, however, simply fail to support that statement. In the March 3 Letter, Mr. Barnes maintains that there are three (not five) categories of costs to be addressed: those identified in reservations one and two, and "[t]he third item of added costs we have yet to consider," namely, the funds required for the spring remobilization. March 3 Letter at 3. The last paragraph of the letter refers to an aggregate of over $320,000 in funds already expended, not those anticipated to be needed for the remobilization. Thus, the March 3 Letter contains no "sum certain" as to reservation three, and does not mention reservations four or five.

Likewise, the March 22 Letter is organized into two main claims (reservations one and two), with the documentation for reservation one, in the amount of $103,721, having been forwarded in a separate Fed Ex package. March 22 Letter at 1. Following Mr. Barnes's certification of claims one and two and signature, a postscript to the letter indicates that "[i]t should be noted that the Contractor has at least one more claim to submit that must wait for documented added costs to re-mobilize our crews and heavy equipment this coming May." *Id.* at 1-2. This again indicates that a claim regarding reservation three will be forthcoming, but could not be asserted at that time due to the lack of a "sum certain." As noted above, a statement that a contractor intends to file a claim in the future does not constitute a CDA claim. *CPS Mech. Contractors*, 59 Fed. Cl. at 765.

Neither letter even hints at a potential future claim regarding professional costs for lawyers or the measurement of the boulders, nor "workers compensation, additional liability insurance costs, housing costs and overrun costs." Complaint ¶ 85. Thus, reservations four and five were never submitted to the contracting officer at all, let alone as proper CDA claims containing a "sum certain."

No proper CDA claims were presented to the contracting officer for reservations three,

four and five, and those portions of the complaint (¶¶ 61-86) must therefore be dismissed without prejudice for lack of jurisdiction pursuant to RCFC 12(b)(1).  It follows that defendant's partial motion to dismiss is **GRANTED**.  The Court **ORDERS** that defendant shall file its answer to plaintiff's complaint within ten days after this order is filed, in accordance with RCFC 12(a)(4)(A)(i); thus, defendant's answer must be filed on or before **April 10, 2009.**

**IT IS SO ORDERED**.

  s/ George W. Miller  
GEORGE W. MILLER  
Judge